IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**CARLOS ENRIQUE VELASQUEZ,**

    Petitioner,

    v.                                                   **Civil Action No. 3:25cv998**

**KRISTI NOEM**, *et al.*,

    Respondents.

## MEMORANDUM OPINION

This matter comes before the Court on Petitioner Carlos Enrique Velasquez's Amended Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 (the "Amended Petition"). (ECF No. 11.)[1] In the Amended Petition, Mr. Velasquez challenges his detention by Immigration and Customs Enforcement ("ICE"), arguing that ICE's failure to provide a bond hearing under 8 U.S.C. § 1226(a) violates his statutory right to such a hearing and his constitutional right to due process under the Fifth Amendment to the United States Constitution. (ECF No. 11 ¶¶ 49–58.)

On January 14, 2026, the Court granted the Amended Petition and ordered Respondents to provide Mr. Velasquez with a bond hearing under 8 U.S.C. § 1226(a). (ECF No. 12.) On January 16, 2026, Respondents filed a Notice informing the Court that Mr. Velasquez was "denied bond as a flight risk and a danger to the community." (ECF No. 13, at 1.)

---

[1] On December 15, 2025, Petitioner properly filed an amended petition. (ECF No. 5.) On January 7, 2026, Petitioner filed the instant Amended Petition, containing the same information as the amended petition, but redacting sensitive information in the Amended Petition and in its attached exhibits. (ECF No. 11.) The Court treats the redacted Amended Petition as the operative petition.

The Court now enters this Memorandum Opinion articulating its reasons for granting the Amended Petition.

## I. Factual and Procedural Background

### A.     Factual Background[2]

Mr. Velasquez is a citizen of El Salvador. (ECF No. 11 ¶ 34.) "On or about February 28, 1998," Petitioner entered the United States without inspection. (ECF No. 11 ¶ 34.) Mr. Velasquez has lived continuously in the United States for over twenty-seven years. (ECF No. 11 ¶¶ 11, 34.) On April 11, 2012, Petitioner became the beneficiary of an I-130, Petition for Alien Relative.[3] (ECF No. 11 ¶ 38; ECF No. 11-5, at 2.)

On May 21, 2013, Mr. Velasquez encountered immigration officials for the first time following his arrest pursuant to a Notice to Appear[4] that charged him with being "present in the United States without being admitted or paroled" or "arriv[ing] in the United States at any time or place other than as designated by the Attorney General" in violation of 8 U.S.C.

---

[2] As discussed below, the Court proceeds by dispelling with additional briefing and incorporating Respondents' filings in this Court's decision in *Duarte Escobar v. Perry*, —F. Supp. 3d—, No. 3:25-cv-758 (MHL) (E.D. Va. 2025). Respondents have recently represented to the Court that "the factual and legal issues presented in the instant habeas petition do not differ in any material fashion from those presented in *Duarte Escobar*." (ECF No. 7, at 1.) Accordingly, the Court's recitation of the factual background relies on the facts as alleged in the Amended Petition.

[3] The parties agree that Petitioner's receipt of an I-130, Petition for Alien Relative, does not create a material factual or legal difference between this case and *Duarte Escobar*. (ECF No. 7, at 3; ECF No. 9, at 3 ("[An] I-130, Petition for Alien Relative . . . does not confer any change in immigration status and it does not make someone eligible to seek admission; it simply establishes the relationship between two people. An approved I-130 petition does not, by itself, grant lawful status or provide protection from removal proceedings or detention.").)

[4] A Notice to Appear is a "'[c]harging document' that 'initiates a proceeding before an Immigration Judge.'" *Hasan v. Crawford*, 800 F. Supp. 3d 641, 648 n.3 (E.D. Va. 2025) (quoting 8 C.F.R. § 1003.13).

2

§ 1182(a)(6)(A)(i). (ECF No. 11 ¶ 35; ECF No. 11-3, at 2.) Since 2013, "he has had numerous [Immigration Court] hearings scheduled, some held, and others rescheduled." (ECF No. 11 ¶ 35.) Mr. Velasquez consistently appeared in Immigration Court until August 31, 2022, when he missed a hearing in which he planned to contest his removal. (ECF No. 11 ¶¶ 35, 36.) As a result, the Immigration Court ordered Mr. Velasquez removed from the United States in absentia. (ECF No. 11 ¶ 37.) The Immigration Court later reopened and dismissed Mr. Velasquez's case, permitting him to pursue a waiver of his inadmissibility to the United States. (ECF No. 11 ¶ 37.)

On September 16, 2025, ICE "randomly" detained Mr. Velasquez as he was driving over the George Washington Memorial Bridge in Washington, D.C. (ECF No. 11 ¶ 39.) Mr. Velasquez has been detained at the Farmville Detention Center since his arrest. (ECF No. 11 ¶¶ 1, 39.)

On October 8, 2025, Mr. Velasquez requested parole or release from ICE custody on his recognizance. (ECF No. 11 ¶ 39). Petitioner never received a response to that request. (ECF No. 11 ¶ 39.) On November 26, 2025, Mr. Velasquez filed a motion seeking a bond hearing before the Annadale, Virginia Immigration Court. (ECF No. 11 ¶ 39.) The Annadale Immigration Court held a bond hearing on December 10, 2025. (ECF No. 11 ¶ 39.) At that bond hearing, the Immigration Judge ("IJ") determined that Mr. Velasquez was not entitled to bond, applying the Board of Immigration Appeals' ("BIA") decision in *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025).[5]

On December 22, 2025, Petitioner filed another motion before the Immigration Court, seeking an additional review of its bond determination. (ECF No. 9, at 3.) Mr. Velasquez did

---

[5] For a discussion of *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025), *see infra*, Note 21.

3

not receive any response to that motion. (ECF No. 9, at 3.) At this Court's direction, the Immigration Court conducted a second bond hearing for Mr. Velasquez on January 15, 2026, during which the IJ denied Petitioner bond "as a flight risk and a danger to the community." (*See* ECF Nos. 12, 13.)

### B. Procedural Background

On December 5, 2025, Mr. Velasquez filed a petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241. (ECF No. 1.) The Court ordered Petitioner to file an amended petition in compliance with Rule 2(c)(5) of the Rules Governing Section 2254 cases.[6] (ECF No. 4.) On December 15, 2025, Mr. Velasquez filed an amended petition in accordance with Rule 2(c)(5). (ECF No. 5.) On January 7, 2026, Petitioner filed a redacted Amended Petition, which the court treats as the operative petition. (ECF No. 11.)[7]

On December 10, 2025, the Court ordered Respondents to file a notice indicating whether the factual and legal issues presented in the Amended Petition differ in any material fashion from those presented in *Duarte Escobar v. Perry, et al.*, —F. Supp. 3d—, 3:25-cv-758 (MHL), (E.D. Va.). (ECF No. 4, at 2–3.) The Court further ordered that, if Respondents indicated that the factual and legal issues did not differ in any material fashion from those presented in *Duarte Escobar*, "each of the substantive filings in [*Duarte Escobar* would] be incorporated into this habeas proceeding, and this Court [would] issue a ruling without further filings from the parties." (ECF No. 4, at 3.)

---

[6] Rule 1(b) of the Rules Governing § 2254 Cases permits this Court to apply the Rules Governing § 2254 Cases to petitions under 28 U.S.C. § 2241. Rule 1(b), Rules Governing § 2254 Cases; *see Aguayo v. Harvey*, 476 F.3d 971, 976 (D.C. Cir. 2007).

[7] *See* Note 1, *supra*.

4

Respondents then stated "that the factual and legal issues presented in the instant habeas petition do not differ in any material fashion from those presented in *Duarte Escobar*." (ECF No. 7, at 1.) "[C]onsistent with [the Court's] recent order," Respondents contend that "this Court should incorporate the filings in *Duarte Escobar* into the record of this habeas action." (ECF No. 7, at 1.) The Court therefore incorporates the parties' merits briefing in *Duarte Escobar* into the record. *See Duarte Escobar*, —F. Supp. 3d—, 3:25-cv-758, ECF Nos. 16, 18, 19, 20 (E.D. Va.).

Mr. Velasquez, as a secondary issue, states that he is a member of the class certified by the United States District Court for the Central District of California in *Bautista v. Santacruz*, — F. Supp. 3d—, 2025 WL 3713987 (C.D. Cal. 2025). (ECF No. 11 ¶ 39.) On December 18, 2025, the *Bautista* court entered a final judgment, certifying a nationwide class of noncitizens who, having been detained by ICE, were deprived of a bond hearing despite their entitlement to such a hearing under 8 U.S.C. § 1226.[8] *See Bautista*, 2025 WL 3713987, at *32. In entering its final judgment, the *Bautista* court granted three forms of class-wide relief: (1) habeas relief for the detainees *named in the complaint*; (2) a nationwide declaratory judgment that the Department of Homeland Security's ("DHS") internal policy[9] regarding mandatory detention is unlawful;

---

[8] A group of habeas petitioners filed the complaint in *Bautista*. The *Bautista* court issued four rulings relevant to the Amended Petition. On November 20, 2025, the *Bautista* court granted the petitioners' motion for partial summary judgment, declaring their detention unlawful. *Bautista v. Santacruz*, No. 5:25-cv-01873, 2025 WL 3289861 (C.D. Cal. Nov. 20, 2025). On November 25, 2025, the *Bautista* court granted the petitioners' motion for class certification. *Bautista*, 2025 WL 3288403 (C.D. Cal. Nov. 25, 2025). On December 18, 2025, the *Bautista* court granted in part and denied in part the petitioners' application for reconsideration and clarification of the court's earlier class certification ruling. *Bautista*, —F. Supp. 3d—, 2025 WL 3713982 (C.D. Cal. 2025). Also on December 18, 2025, the *Bautista* court entered its final judgment. *Bautista*, —F. Supp. 3d—, 2025 WL 3713987 (C.D. Cal. 2025). It is that fourth decision regarding final judgment that the Court relies upon here.

[9] For a discussion of this policy, *see infra*, Note 21.

5

(3) nationwide vacatur of the same DHS internal policy under the Administrative Procedure Act ("APA"). *Bautista*, 2025 WL 3713987, at *12–16, *21, *28–32.

On December 10, 2025, the Court ordered the parties to brief (1) whether the nationwide class certified *Bautista* deprived the Court of jurisdiction over the Amended Petition; and (2) whether the Court was required stay this action in connection with *Bautista*. (ECF No. 4, at 3.) After receiving the parties' responses to its December 10, 2025 Order, the Court dispelled with further merits briefing by the parties. (ECF No. 4, at 3.)

On January 14, 2026, the Court granted Mr. Velasquez's Amended Petition and ordered Respondents to provide Mr. Velasquez with a bond hearing.[10] (ECF No. 12.) The Court noted that it would explain its reasoning in a forthcoming Memorandum Opinion. (ECF No. 12, at 1.) The Court explains, for the reasons articulated below, why it granted Mr. Velasquez's Amended Petition.

## II. Standard of Review

28 U.S.C. § 2241(a) provides that "[w]rits of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." *Id.* "A federal court may grant habeas relief only on the ground that the petitioner is in custody in violation of the Constitution or laws or treaties of the United States." *Torrence v. Lewis*, 60 F.4th 209, 213 (4th Cir. 2023) (internal citations and brackets omitted). After receiving the petition and any response thereto, "[t]he court shall summarily hear and determine the facts, and dispose of the matter as law and justice require." 28 U.S.C. § 2243.

---

[10] On January 15, 2026, Mr. Velasquez received bond hearing, during which the IJ denied Mr. Velasquez bond because he posed a "flight risk and a danger to the community." (ECF No. 13, at 1.)

6

### III. Analysis

The Court's January 14, 2026 Order addressed whether, prior to his Court-ordered January 15, 2026 bond hearing, Mr. Velasquez was entitled to a discretionary bond hearing under 8 U.S.C. § 1226(a)[11] or whether he was subject to the mandatory detention provision of 8 U.S.C. § 1225(b)(2)(A).[12] Petitioner contended that 8 U.S.C. § 1226 entitled him to a bond

---

[11] 8 U.S.C. § 1226 provides, in relevant part:

(a) Arrest, detention, and release

On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General—

(1) may continue to detain the arrested alien; and

(2) may release the alien on—

(A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or

(B) conditional parole[.]

8 U.S.C. § 1226(a)(1)–(2).

[12] 8 U.S.C. § 1225 provides, in pertinent part:

(b) Inspection of applicants for admission

(2) Inspection of other aliens

(A) In general

Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

8 U.S.C. § 1225(b)(2)(A).

7

hearing. Specifically, Mr. Velasquez argued that (1) the discretionary detention provisions of 8 U.S.C. § 1226(a) entitled him to a bond hearing, (ECF No. 11 ¶¶ 53–58); and (2) that his Fifth Amendment Due Process Rights bolstered his entitlement to such a hearing (ECF No. 11 ¶¶ 49–52).[13]

In opposition, Respondents relied on their arguments incorporated by this Court from *Duarte Escobar v. Perry*, —F. Supp. 3d—, 2025 WL 3006742 (E.D. Va. 2025).[14] Here, as in

---

[13] To repeat, Petitioner asserts that he is a member of a class certified in *Bautista*, in which the United States District Court for the Central District of California "certified a nationwide class, finding that the government is unlawfully denying bond hearings to many detained immigrants." (ECF No. 11 ¶ 39.) The *Bautista* court announced three remedies for the nationwide class: habeas relief for the named class members, nationwide declaratory relief, and nationwide vacatur under the Administrative Procedure Act. However, in neither the Amended Petition nor his response to the Court's December 10, 2025 Order does Petitioner assert directly that he is entitled to a bond hearing *because* of his membership in the *Bautista* class. Mr. Velasquez merely says that he is a member of the *Bautista* class; that he moved for a bond hearing before the Immigration Court "because [he] is a member of the national Bond Eligible Class in *Bautista*"; and that he seeks individualized habeas relief "because it is not clear that the government is complying with the *Bautista* court[']s directives." (ECF No. 11 ¶ 39; ECF No. 9, at 4.)

[14] Respondents' arguments have also been raised and decided throughout the country. The vast majority of the courts addressing this issue have concluded that 8 U.S.C. § 1226(a) pertains, meaning petitioners like Mr. Velasquez should receive a bond hearing, as he ultimately did. *See Luna Quispe v. Crawford*, No. 1:25-cv-1471 (AJT), 2025 WL 2783799, at 6 n.9 (E.D. Va. Sept. 29, 2025) (collecting thirty cases rejecting Respondents' arguments as of September 29, 2025).

In addition, dozens of courts in the Eastern District of Virginia (including this Court) have rejected Respondents' position on eminently sound bases. *See, e g.*, *Hasan v. Crawford*, 800 F. Supp. 3d. 641 (E.D. Va. 2025); *Quispe*, 2025 WL 2783799; *Quispe-Ardiles v. Noem*, No. 1:25-cv-01382 (MSN), 2025 WL 2783800 (E.D. Va. Sept. 30, 2025); *Vargas Nunez v. Lyons*, 1:25-cv-1574 (LMB), ECF No. 10 (E.D. Va. Oct. 1, 2025); *Diaz Gonzalez v. Lyons*, 1:25-cv-1583 (LMB), ECF No. 8 (E.D. Va. Oct. 1, 2025); *Gomez Alonzo v. Simons*, 1:25-cv-1587 (LMB), ECF No. 16 (E.D. Va. Oct. 1, 2025); *Perez Bibiano v. Lyons*, 1:25-cv-1590 (LMB), ECF No. 8 (E.D. Va. Oct. 2, 2025); *Ortiz Ventura v. Noem*, 1:25-cv-1429 (MSN), ECF No. 16 (E.D. Va. Oct. 2, 2025); *Lopez-Sanabria v. Bondi*, 1:25-cv-1511 (MSN), ECF No. 9 (E.D. Va. Oct. 3, 2025); *Singh v. Bondi*, No. 1:25-cv-1525 (MSN), ECF No. 8 (E.D. Va. Oct. 7, 2025); *Guerra Leon v. Noem*, 1:25-cv-1634 (LMB), ECF No. 12 (E.D. Va. Oct. 8, 2025); *Maldonado Merlos v. Noem*, 1:25-cv-1645 (LMB), ECF No. 11 (E.D. Va. Oct. 9, 2025); *Alfaro v. Lyons*, 1:25-cv-1569

*Duarte Escobar*, Respondents insisted (1) that the Court lacks jurisdiction over the Amended Petition by virtue of two jurisdiction-stripping provisions of the Immigration and Nationality Act ("INA"), (*Duarte Escobar*, ECF No. 18, at 7–8); (2) that even if the Court had jurisdiction over the Amended Petition, Mr. Velasquez's detention was lawful under 8 U.S.C. § 1225's mandatory detention provisions, (*Duarte Escobar*, ECF No. 18, at 8–20); and (3) that Mr. Velasquez's constitutional due process rights had not been violated, (*Duarte Escobar*, ECF No. 18, at 20–28).[15]

The parties' arguments as to all challenges raised are substantially similar to those made

---

(AJT), ECF No. 11 (E.D. Va. Oct. 11, 2025); *Singh v. Lyons*, No. 1:25-cv-01606 (AJT), 2025 WL 2932635 (E.D. Va. Oct. 14, 2025); *Teyim v. Perry*, No. 1:25-cv-01615 (MSN), 2025 WL 2950183 (E.D. Va. Oct. 15, 2025); *Hernandez v. Crawford*, No. 1:25-cv-01565, 2025 WL 2940702 (AJT) (E.D. Va. Oct. 16, 2025); *Pineda v. Simon*, No. 1:25-cv-01616 (AJT), 2025 WL 2980729 (E.D. Va. Oct. 21, 2025); *Lapop v. Noem*, No. 1:25-cv-1666 (AJT), 2025 WL 2997507 (E.D. Va. Oct. 24, 2025); *Ramirez Gomez v. Trump*, No. 1:25-cv-1443 (MSN), ECF No. 12 (E.D. Va. Oct. 27, 2025); *Duarte Escobar*, 2025 WL 3006742; *Boquin Oliva v. Noem*, No. 1:25-cv-1592 (RDA), ECF No. 12 (E.D. Va. Oct. 29, 2025); *Aguilar Lares v. Bondi*, No. 1:25-cv-1562 (LMB), ECF No. 18 (E.D. Va. Oct. 29, 2025); *Esquina Flores v. Crawford*, No. 1:25-cv-1564 (PTG), ECF No. 13 (E.D. Va. Nov. 11, 2025); *Palacios Zepeda v. Crawford*, No. 1:25-cv-1561 (PTG), ECF No. 22 (E.D. Va. Nov. 21, 2025); *Len v. Hott, et al.*, 1:25-cv-01966 (MSN), 2025 WL 4074641 (E.D. Va. Nov. 21, 2025); *Larios v. Noem*, No. 1:25-cv-01810 (AJT), 2025 WL 3285491 (E.D. Va. Nov. 25, 2025); *Molina Lopez v. Lyons, et al.*, No. 1:25-cv-01838 (AJT), 2025 WL 3285493 (E.D. Va. Nov. 25, 2025); *Contreras Perez v. Noem, et al.*, No. 3:25-cv-882 (MHL), 2025 WL 3281774 (E.D. Va. Nov. 25, 2025); *Campos Flores v. Bondi*, No. 3:25-cv-797 (MHL), 2025 WL 3461551 (E.D. Va. Dec. 2, 2025); *Romero v. Crawford*, No. 3:25-cv-00788 (HEH), 2026 WL 94634 (E.D. Va. Jan. 13, 2026).

The Court recognizes that a small minority of district courts have accepted Respondents' arguments. *See, e.g., Chavez v. Noem*, 801 F. Supp. 3d 1133, 1140–41 (S.D. Cal. 2025); *Vargas Lopez v. Trump*, — F. Supp. 3d —, 2025 WL 2780351, at *7–10 (D. Neb. 2025). These decisions do not alter this Court's determination.

[15] Respondents did not argue that Mr. Velasquez has failed to exhaust his administrative remedies, and they therefore waive any argument on that point. But even had Respondents raised an exhaustion defense, they would not prevail because exhausting Mr. Velasquez's administrative remedies prior to filing his Amended Petition would be futile. *See Duarte Escobar*, 2025 WL 3006742, at *5.

in recent § 2241 habeas actions in the Eastern District of Virginia, including four cases decided by this Court. *See Duarte Escobar*, 2025 WL 3006742; *Perez-Gomez v. Warden*, 3:25-cv-773 (MHL), 2025 WL 3141103 (E.D. Va. Nov. 10, 2025) (rejecting the same arguments made in *Duarte Escobar*); *Contreras-Perez v. Noem*, No. 3:25-cv-882 (MHL), 2025 WL 3281774 (E.D. Va. Nov. 25, 2025) (same); *Campos Flores v. Bondi*, No. 3:25-cv-797 (MHL), 2025 WL 3461551 (E.D. Va. Dec. 2, 2025). Mr. Velasquez's Amended Petition raised no new issues that would compel a different outcome.

The Court concluded that 8 U.S.C. § 1226(a) and the Fifth Amendment entitled Mr. Velasquez to a bond hearing. Accordingly, on January 14, 2026, the Court appropriately granted the Amended Petition. (ECF No. 12.)

### A. The Court Has Jurisdiction Over the Amended Petition

#### i. The *Bautista* Court's Certification of a Nationwide Class Does Not Strip the Court of Jurisdiction Over the Amended Petition

As discussed above, Mr. Velasquez states that he is a member of the class certified by the United States District Court for the Central District of California in *Bautista*. (ECF No. 11 ¶ 39.) Because the *Bautista* court ordered habeas relief with respect to its class members, the Court ordered the parties to brief whether the *Bautista* court's certification of its class either deprived the Court of jurisdiction over the Amended Petition or whether the Court should stay the present action.[16] (ECF No. 4, at 3.) The parties argue, and the Court agrees, that the Court retains

---

[16] When the Court ordered the parties to brief these issues on December 10, 2025, the *Bautista* court had not yet issued its final judgment and had not yet explained the relief it granted. As a result, the parties' briefing concerned only the *habeas* relief granted by the *Bautista* court and did not discuss its grant of a *declaratory judgment* and *vacatur*. Respondents correctly argued that the *Bautista* court lacked the power to issue habeas relief outside of the Central District of California. (ECF No. 7, at 2–3.) Petitioner likewise noted that *Bautista* had not "guarantee[d] [Petitioner] the *individualized* release determination or relief sought here."

jurisdiction over the Amended Petition despite the *Bautista* court's final judgment and class certification.

The *Bautista* court's habeas relief does not strip this Court of jurisdiction, nor does that relief counsel in favor of staying the present action. *Bautista's* grant of habeas relief applied only to the habeas petitioners named in the *Bautista* complaint. *Bautista*, 2025 WL 3713987, at *14 ("[T]he available [habeas] relief is limited to the *named [p]etitioners*.") (emphasis added). Only this Court has jurisdiction to provide Mr. Velasquez with habeas relief. *See Rumsfeld v. Padilla*, 542 U.S. 426, 442–43 (2004) (explaining that district courts are limited to granting habeas relief "within their respective jurisdictions").

Even if Petitioner is a member of the *Bautista* class, the Court is free to grant Mr. Velasquez individualized habeas relief. Because the Court confined its order for supplemental briefing to *Bautista*'s jurisdictional impact, the Court takes no position on whether Mr. Velasquez is properly considered a member of a *Bautista* class nor whether Mr. Velasquez is entitled to a bond hearing as a consequence of his inclusion in that class.[17] The Court concludes only that *Bautista* does not deprive the Court of its jurisdiction to adjudicate the merits of

---

(ECF No. 9, at 2 (emphasis added).) The Court agrees with both parties' assessments of *Bautista* and addresses Mr. Velasquez's Amended Petition on its individual merits.

[17] Again, neither party has discussed whether Petitioner is entitled to a bond hearing as a consequence of any relief afforded by the *Bautista* court, *see supra,* Note 16, so the Court does not address the effects of *Bautista* on the merits of Mr. Velasquez's Amended Petition.

As noted, the *Bautista* court also provided nationwide declaratory relief and vacatur concerning DHS' internal detention policy. *Bautista*, 2025 WL 3713987, at *32. Neither party specifies whether Mr. Velasquez could be subject to the declaratory relief granted in *Bautista* deeming the DHS' mandatory detention policy unlawful, *see infra* Note 21, or the nationwide vacatur of that policy under the APA. The Court need not, and does not, address those issues here.

11

Petitioner's individualized claim for habeas relief.[18] As Petitioner correctly argues, Mr. Velasquez's association with the Bond Eligible Class "[does] not extinguish [his] individual[] right to pursue habeas relief" in this Court. (ECF No. 9, at 2.)

### ii. The Jurisdiction Stripping Provisions of the INA Do Not Deprive this Court of Jurisdiction Over the Amended Petition

Further, as this Court held in *Duarte Escobar*, neither 8 U.S.C. §§ 1252(b)(9)[19] nor 1252(g)[20] divests this Court of jurisdiction under 28 U.S.C. § 2241 to review Mr. Velasquez's Amended Petition. *Duarte Escobar*, 2025 WL 3006742, at *6–8; *see also Luna Quispe*, 2025 WL 2783799, at *2–3.

### B. The Court Appropriately Ordered that the Immigration Court Conduct Another Bond Hearing for Mr. Velasquez Because He Was Entitled to a Bond Hearing Pursuant to 8 U.S.C. § 1226

With respect to the substance of Petitioner's claim, Mr. Velasquez argues that his detention prior to the January 15, 2026 hearing was governed by the discretionary detention

---

[18] Other courts have taken the same approach, adjudicating habeas petitioners' requests for bond hearings on an individualized basis even when those petitioners claimed an entitlement to a bond hearing pursuant to the relief ordered in *Bautista*. *See, e.g.*, *Bautista Villanueva v. Bondi*, No. 25-cv-4152, 2026 WL 100595, at *2 (D. Md. Jan. 14, 2026) ("[R]egardless of [the petitioner's] membership in the . . . *Bautista* class, and regardless of the entry of the declaratory judgment in that case, [the petitioner] has shown that she is not subject to mandatory detention under § 1225.")

[19] For instance, 8 U.S.C. § 1252(b)(9) does not divest this Court of its habeas jurisdiction because Mr. Velasquez does not seek review of a removal order. *Duarte Escobar*, 2025 WL 3006742, at *6–7 (citing *Jennings v. Rodriguez*, 583 U.S. 294–95 (2018) (plurality opinion)).

[20] 8 U.S.C. § 1252(g) likewise does not divest the Court of its habeas jurisdiction because this case does not involve commencement, adjudication, or execution of any immigration order. *Duarte Escobar*, 2025 WL 3006742, at *7–8 ("[Section] 1252(g) does not apply 'to *all* claims arising from deportation proceedings.'" (quoting *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (emphasis added))).

12

provisions of § 1226 rather than the mandatory detention provisions in § 1225(b)(2). (ECF No. 11 ¶¶ 42–48, 56–58.)

According to Respondents, Mr. Velasquez's detention prior to the January 15, 2026 bond hearing was lawful under the INA because Mr. Velasquez was not legally granted entry into the country and is therefore an "applicant for admission," meaning § 1225(b)(2) governs his detention. (*Duarte Escobar*, ECF No. 18, at 8–20.) For the reasons stated by this Court in *Duarte Escobar*, as well as the dozens of other decisions issued by courts in this District on the same issue, this Court concluded that Petitioner's detention is governed by 8 U.S.C. § 1226(a)'s discretionary framework, not § 1226(b)'s mandatory detention procedures. *Duarte Escobar*, 2025 WL 3006742, at *8–13. Respondents' argument fails.

Mr. Velasquez has been present in the United States since 1998. (ECF No. 11 ¶ 34.) He is thus not an "applicant for admission" subject to the mandatory detention provisions of § 1225 but rather falls within the discretionary detention provisions of § 1226(a) governing aliens who are already in the country. *See Jennings v. Rodriguez*, 583 U.S. 281, 288–90, 303 (2018) (finding that § 1226(a) is the "default rule" governing "aliens already in the country" whereas § 1225 governs "aliens seeking admission into the country").[21] For the reasons articulated in

---

[21] The Court observes that, for decades, "Immigration Judges have conducted bond hearings for aliens who entered the United States without inspection." *Matter of Yajure Hurtado*, 29 I&N Dec. 216, 225 n.6 (BIA 2025). But on July 8, 2025, "Acting Director of U.S. Immigration and Customs Enforcement, Todd M. Lyons, issued an internal memorandum explaining that the agency had 'revisited its legal position'" by determining that "[the mandatory detention provisions of section 1225] of the Immigration and Nationality Act (INA), rather than [the discretionary detention provisions of section 1226], is the applicable immigration detention authority for all applicants for admission." *Martinez v. Hyde*, 792 F. Supp. 3d 211, 217–18 (D. Mass 2025). The July memorandum characterized, seemingly for the first time, all noncitizens who entered the United States without inspection as doing so "seeking admission," no matter how much time passed between their entrance into the United States and their apprehension by law enforcement.

13

*Duarte Escobar*, the plain text of the INA,[22] Supreme Court precedent, district court decisions around the country, and decades of practice support this conclusion. *Duarte Escobar*, 2025 WL 3006742, at *8–13. Therefore, prior to the January 15, 2026 bond hearing ordered by the Court, Petitioner was entitled to a bond hearing under § 1226(a) and its implementing regulations. The Court appropriately ordered the Immigration Court to provide Mr. Velasquez with the January 15, 2026 bond hearing.

  C. **The Court Appropriately Ordered that the Immigration Court Conduct Another Bond Hearing for Mr. Velasquez Because His Fifth Amendment <u>Due Process Rights Were Violated</u>**

Petitioner also argues that prior to the January 15, 2026 bond hearing, his detention without a bond hearing violated his due process rights under the Fifth Amendment's Due Process

---

  On September 5, 2025, the Board of Immigration Appeals ("BIA") released a precedential decision in *Matter of Yajure Hurtado* in line with Acting Director Lyons' memorandum. "Pursuant to the BIA's decision in *Hurtado*, nearly all noncitizens who entered the United States without inspection are now subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2), rather than the discretionary detention provisions of 8 U.S.C. § 1226(a)." *Soto v. Soto*, —F. Supp. 3d—, 2025 WL 2976572, at *1 (D.N.J. 2025) (citing *Hurtado*, 29 I&N Dec. at 227–29).

  The Court owes the BIA no deference in its interpretation of the INA and interprets §§ 1225 and 1226 *de novo*. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 395–96 (2024). Indeed, the *Bautista* court persuasively found that *Matter of Yajure Hurtado* cannot be *controlling* law because it relies on the same faulty statutory analysis rejected in *Bautista*. *Bautista*, 2025 WL 3713987, at *12; *see also Duarte Escobar*, 2025 WL 3006742, at *12. The same is true here.

  [22] As this Court explained in *Duarte Escobar*, § 1225 requires that an applicant be "seeking admission" to the United States. 8 U.S.C. § 1225(b)(2). The statute's use of active language suggests that an alien must be taking *active* steps towards "seeking admission" to the United States. Presence in the country is not enough. *Duarte Escobar*, 2025 WL 3006742, at *9. To find otherwise, as Respondents (again) ask this Court to do, would render other provisions of the INA superfluous. *Id.* at *9–10.

14

Clause.[23] (ECF No. 11 ¶¶ 16–23, 49–52.) Respondents contend that prior to his latest bond hearing, Petitioner's due process rights were governed only by the INA, rather than the Fifth Amendment's Due Process Clause, and that even if Petitioner was subject to the Fifth Amendment's Due Process protections, denying him a bond hearing did not violate his constitutional rights. (*Duarte Escobar*, ECF No. 18, at 20–28.)

For the reasons articulated in *Duarte Escobar*, the Court appropriately determined that Mr. Velasquez's due process rights were governed by the Fifth Amendment and that his continued detention under 8 U.S.C. § 1225 without a bond hearing violated his due process rights. *Duarte Escobar*, 2025 WL 3006742, at *14–16. Specifically, the Court found that all three *Mathews* factors weighed in Mr. Velasquez's favor: (1) he had a strong private interest in remaining free from physical detention; (2) there was a significant risk of erroneous deprivation of his due process rights because he was entitled to a bond hearing under § 1226(a) that he has not received; and, (3) Respondents failed to demonstrate a compelling government interest in detaining Petitioner without a bond hearing. *Duarte Escobar*, 2025 WL 3006742, at *14–16 (citing *Mathews v. Eldridge*, 424 U.S. 319 (1976)). The Court therefore appropriately ordered the Immigration Court to provide Petitioner with another bond hearing in order to vindicate his Fifth Amendment rights.

---

[23] The Fifth Amendment to the United States Constitution provides, in pertinent part:

No person shall . . . be deprived of life, liberty or property without due process of law.

U.S. Const. amend. V.

## IV. Conclusion

Under § 1226(a) and its implementing regulations, the Court appropriately determined that Petitioner was entitled to a bond hearing before an Immigration Judge at which the government was required to prove by clear and convincing evidence that he poses a danger to the community, or by a preponderance of the evidence that he is a danger or flight risk if the government seeks to continue detaining Mr. Velasquez. 8 U.S.C. § 1226(a); 8 C.F.R. § 1236.1(d)(1).[24]

For the reasons articulated above, the Court appropriately granted Mr. Velasquez's Amended Petition, (ECF No. 11), and ordered that he be provided a bond hearing with an Immigration Judge pursuant to 8 U.S.C. § 1226(a). Mr. Velasquez received that bond hearing on January 15, 2026. The Court will direct the Clerk to close the case.

An appropriate Order shall issue.

Date: 2/3/26
Richmond, Virginia

/s/
M. Hannah Lauck
Chief United States District Judge

---

[24] 8 C.F.R. § 1236.1(d)(1) provides, in relevant part:

> After an initial custody determination by the district director, including the setting of a bond, the respondent may, at any time before an order under 8 CFR part 1240 becomes final, request amelioration of the conditions under which he or she may be released. Prior to such final order, and except as otherwise provided in this chapter, the immigration judge is authorized to exercise the authority [under § 1226] . . . to detain the alien in custody, release the alien, and determine the amount of bond, if any, under which the respondent may be released, as provided in § 1003.19 of this chapter.

8 C.F.R. § 1236.1(d)(1).